**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

RICHARD FROMMEL,            Case No. 1:14-cv-522

    Plaintiff,            Dlott, J.
                                               Bowman, M.J.
  v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

**REPORT AND RECOMMENDATION**

Plaintiff Richard Frommel filed this Social Security appeal in order to challenge the Defendant's determination that he is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents two claims of error, which the Defendant disputes. As explained below, I conclude that the ALJ's finding of non-disability should be REVERSED, because it is NOT supported by substantial evidence in the administrative record.

**I. Summary of Administrative Record**

Plaintiff filed applications for Disability Insurance Benefits ("DIB") and for Supplemental Security Income ("SSI") on December 13, 2010, alleging disability beginning on December 1, 2009, based primarily upon physical impairments, although he also alleges claustrophobia and an affective disorder. Plaintiff's applications were denied initially and upon reconsideration, and he timely requested an evidentiary hearing. On November 29, 2012, Plaintiff appeared with counsel at a hearing held before Administrative Law Judge ("ALJ") Ena Weathers in Cincinnati, Ohio. (Tr. 30-63). Plaintiff provided testimony, as did a vocational expert. On January 10, 2013, the ALJ

issued a written decision in which she concluded that Plaintiff was not disabled. (Tr. 10-22). The Appeals Council denied review, leaving the ALJ's decision as the final decision of the Commissioner. Plaintiff timely filed this judicial appeal.

Plaintiff was 49 years old at the outset of his alleged disability but was 53 years old, in the "closely approaching advanced age" category, on the date of the decision.[1] He has a limited tenth grade education and can no longer perform any of his past relevant work as an assembly line worker, plumber, floor technician, blacktop worker, air compressor builder, or cleaner. (Tr. 20). Plaintiff was laid off from his last job in 2008, and did not seek other employment.

The ALJ found that Plaintiff "has the following severe impairments: morbid obesity, lumbar degenerative disc disease, chronic obstructive pulmonary disease (COPD), adjustment disorder wit depressed mood, and heavy tobacco abuse." (Tr. 12). The ALJ determined that none of those impairments or combination thereof met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, such that Plaintiff would be entitled to a presumption of disability. (Tr. 15). Rather, the ALJ concluded that Plaintiff retained the following residual functional capacity ("RFC") to perform a range of "light work…, except that he is limited to occasional climbing, stooping, kneeling, and crawling; avoiding concentrated exposure to humidity, fumes, odors, dusts, gasses and poor ventilation; no use of elevators or work in confined areas; and performing only simple, routine, and repetitive tasks." (Tr. 16). Based upon the testimony of the vocational expert, the ALJ found that Plaintiff could perform two "light" level jobs that exist in significant numbers in the national and

---

[1] Although counsel refers to Plaintiff's present age as 54, only his age from his alleged disability onset up through the date of the Commissioner's last decision is relevant on appeal.

regional economies, such as photocopying machine operator and cashier, as well as the sedentary job of lens inserter. (Tr. 21).

Plaintiff argues that the ALJ erred by overstating the number of jobs that he could do. Plaintiff asserts further error based upon an alleged discrepancy between the jobs to which the vocational expert testified and the job descriptions contained in the Dictionary of Occupational Titles. I conclude that the first error requires remand for further fact-finding.

## II. Analysis

### A. Judicial Standard of Review

To be eligible for benefits, a claimant must be under a "disability" within the definition of the Social Security Act. *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if

3

substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion . . . . The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for supplemental security income or for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he or she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, he or she suffered an impairment, or combination of impairments, expected to last at least twelve

months, that left him or her unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A).

### B. Specific Errors

#### 1. Remand Required to Determine Whether Significant Jobs Remain

As Plaintiff points out, if the ALJ had limited him to sedentary work, then Grid Rule 201.10 would have entitled him to a presumption of disability. However, the ALJ found that Plaintiff could perform at least some portion of jobs in the "light" exertional category. In order to determine whether a "significant" number of those jobs remain that someone with Plaintiff's limitations can perform, the ALJ relied upon testimony from a vocational expert ("VE"). Testimony from a vocational expert may be sufficient to show that substantial evidence supports an ALJ's decision, so long as the hypothetical provided to the VE accurately portrays the Plaintiff's impairments. *See Varley v. Sec'y of HHS*, 830 F.2d 777 (6th Cir. 1987). In this case, however, Plaintiff argues that the ALJ erred by misinterpreting the VE's testimony, thereby concluding that Plaintiff could perform a larger number of jobs than the VE indicated were available to someone with Plaintiff's limitations.

The VE testified, and the ALJ found, that Plaintiff could perform three representative jobs – two at the light level (photocopy machine operator and cashier), and a third at the sedentary level (lens inserter). The VE testified that there were 730 photocopy machine operator jobs, 21,410 cashier jobs, and 1,200 lens inserter jobs available in the greater Cincinnati area. (Tr. 54-55). Plaintiff first argues, and Defendant does not dispute on the record presented, that the ALJ should not have included the sedentary job of lens inserter in the total number of jobs found to be

5

significant, because Plaintiff would be entitled to benefits if he were limited to sedentary work.

Plaintiff further argues that the ALJ erred including the job of cashier, which constituted the largest number of light exertional level jobs to which the VE testified. Although the VE initially identified cashier as a job that Plaintiff could perform, the VE corrected his testimony once he was reminded that Plaintiff required the use of an oxygen tank due to his severe COPD.[2] (Tr. 57). The subtraction of both the sedentary job of lens inserter and the cashier job from the total number of jobs available to Plaintiff dramatically impacts the ALJ's analysis and conclusion that many thousands of representative jobs are available to Plaintiff in the Cincinnati area. Rather than well in excess of 23,000 aggregate jobs, the evidence from the VE supports a far more limited conclusion that just 730 representative photocopy machine operator jobs remain. For that reason alone, remand is required.

In response, Defendant suggests that the VE testified – consistent with the ALJ's finding - that there were 66,480 photocopy machine operator jobs in the national economy, (Doc. 8 at 5), which Defendant asserts is sufficient to affirm. However, the undersigned finds the VE's actual testimony concerning the number of photocopy machine operator jobs available in the national economy to be more nuanced. After testifying that there were "*some light and sedentary position*" jobs including photocopy machine operator with 730 local positions, the VE testified that "the national numbers for this *and other similar jobs* is 66,580." (Tr. 54, emphasis added). Thus, it is unclear to the undersigned whether the VE was testifying specifically to 66,580 photocopy machine operator jobs, or whether that number reflects the combined job category of

---

[2]There is no question that Plaintiff required oxygen on a full-time basis. (Tr. 17, 21-22).

6

"similar" "light and sedentary" jobs.  Even if the former is accurate, remand is required to ascertain whether that number of jobs in the national economy is significant, due to the far smaller number of jobs available in the Cincinnati area.

Of course, Defendant also argues that if just 730 photocopy machine operator jobs exist in the local economy, that number still remains "significant." In other words, Defendant argues that the ALJ's clear error was harmless.  (Doc. 8 at 6).  However, the undersigned finds that remand is required to determine whether 730 jobs in the local economy is "significant." The Sixth Circuit has cautioned that what constitutes a "significant" number of jobs must be determined on a case-by-case basis. *See Hall v. Bowen*, 837 F.2d 272, 275 (6th Cir. 1988).  Notably, the Sixth Circuit cases cited by Defendant in support of its position reference higher numbers of local jobs than the 730 photocopy machine operator jobs allegedly available to Plaintiff here.  *See e.g., Nejat v. Com'r of Soc. Sec.*, 359 Fed. Appx. 574, 579 (6th Cir. 2009)(2,000 jobs); *Martin v. Com'r of Soc. Sec.*, 170 Fed. Appx. 369, 375 (6th Cir. 2006)(870 jobs); *see also Hall v. Bowen, supra,* (1350 jobs).

As Plaintiff points out, a sister court within the Sixth Circuit remanded on very similar facts in a published decision.  *See Mackins v. Astrue*, 655 F. Supp.2d 770, 773 (W.D. Ky. 2009).  In *Mackins*, the ALJ erred by relying on vocational expert testimony that did not fully accurately portray the plaintiff's limitations.  When the proper limitations were added and incompatible jobs were subtracted, the VE's testimony made clear that only one job – the same photocopy machine operator job at issue in this case – remained available to that plaintiff.  Similar to the VE herein, the VE in *Mackins* testified that there were 900 photocopy machine operator jobs in Kentucky and 60,0000 in the

7

nation. The court flatly rejected the Commissioner's argument that such numbers remained "significant" enough to render any error harmless.

> The Court is not aware of any controlling authority which finds 900 jobs in the state or 60,000 jobs in the nation to represent a "significant" number of jobs in the national economy. Nor has the Commissioner cited any such authority in its objections. Furthermore, in this age of computers, e-mail, electronic court filing, paperless billing, and other time-saving technology, it is difficult to imagine that there are 900 full-time copy machine attendant jobs in the state economy, or 60,000 in the nation at large. The Court simply cannot find that 60,000 copy machine jobs—if in fact there are that many—constitute a significant number of jobs in the national economy.

*Mackins v. Astrue*, 655 F. Supp. 2d at 773; *contrast Stewart v. Sullivan*, 904 F.2d 708 (6th Cir. 1990)(*per curiam*, unpublished, text available on Westlaw)(finding as few as 125 jobs in a local area to be "significant" in a less populous area, in part because 400,000 positions were available nationally).

Under both *Hall v. Bowen* and the persuasive authority of *Mackins*, the undersigned concludes that this case should be remanded for further consideration of whether a "significant" number of jobs remained to Plaintiff in both the local and national economies. *Accord Coleman v. Astrue,* 2010 WL 4094299 (M.D. Tenn. Oct. 18, 2010) (remanding for further fact-finding on whether significant number of jobs remain); *Burnett v. Com'r*, Civil Case No. 1:12-cv-366-MRB, R&R filed on May 21, 2013 (Doc. 10), adopted at 2013 WL 2897876 (June 13, 2013)

### 2. Alleged Discrepancies Between the DOT and VE testimony

Plaintiff's second assertion of error concerns alleged discrepancies between the VE's testimony and the Dictionary of Occupational Titles ("DOT"). Specifically, Plaintiff urges this Court to award benefits based upon his position that his RFC prevents him from performing the photocopy machine operator job, as that job is defined by the DOT. Before turning to the alleged discrepancy between the VE's testimony and the DOT,

8

however, the undersigned will address two express or implied assumptions by Plaintiff: (1) that reversal is required any time a variance is discovered between the DOT and VE testimony; and (2) that the ALJ was required to independently investigate and reconcile any discrepancies. Both assumptions are incorrect as a matter of law.

Social Security Ruling ("SSR") 00-4p states that in making disability determinations, the agency relies "primarily on the DOT," and that the testimony of a VE should "generally be consistent" with the DOT. However, it is not uncommon for a litigant to discover minor discrepancies between DOT descriptions and a vocational expert's testimony, and the Sixth Circuit has made clear that such variations will rarely provide grounds for remand. In *Beinlich v. Com'r of Soc. Sec.*, 345 Fed. Appx. 163, 168 (6th Cir., Sept. 9, 2009), for example, the court explained that just because a VE's testimony concerning the existence of specified jobs is contrary to the precise description listed in the DOT "does not establish that [the jobs] do not exist."

Additionally, while it is true that Soc. Sec. Rul. 00-4p imposes an affirmative duty on ALJs to ask the VE if the evidence that he has provided "conflicts with [the] information provided in the DOT," only if the VE testifies that there is a conflict must the ALJ seek out "a reasonable explanation for [the] apparent conflict." *Lindsley v. Com'r of Soc. Sec.*, 560 F.3d 601, 603-605 (6th Cir. 2009)(affirming despite discrepancies between DOT occupations and VE testimony, because "the DOT's job classifications are collective descriptions of 'occupations' that can encompass numerous jobs," such that the fact that testimony did not "align perfectly" did not require remand). Other cases similarly hold that the ALJ is not required "to conduct his or her own investigation into the testimony of a vocational expert to determine its accuracy, especially when the claimant fails to bring any conflict to the attention of the administrative law judge."

*Ledford v. Astrue*, 311 Fed. Appx. 746, 757 (6th Cir. 2008); *see also Winslow v. Com'r*, 566 Fed. Appx. 418, 421 (6th Cir., 2014).

The record presented reflects that the ALJ satisfied her affirmative duty to ask the VE if his testimony was consistent with the DOT. The VE unequivocally testified that his descriptions were consistent, and no conflicts were identified by Plaintiff prior to his submission to the Appeals Council. (Tr. 56). Plaintiff's counsel had the opportunity to bring discrepancies to the attention of the ALJ at the hearing, but chose to focus on whether the exertional demands required to perform the photocopy machine operator position would exceed the "light" exertional category due to the volume of paper involved, and/or whether the job description remained the same despite the fact that the DOT description has not been updated in 35 years. (Tr. 58-59).

Plaintiff claims before this Court that he was "under no obligation to cross examine [the] VE," because it remained the Commissioner's burden at Step 5 of the sequential analysis to prove that a significant number of jobs exist that Plaintiff can perform. However, on the record presented and under controlling case law, the ALJ had no legal obligation to independently cross-examine the VE. Thus, the ALJ was permitted to rely on the VE's unchallenged testimony that someone like Plaintiff who was limited to "simple, routine, and repetitive tasks" could nevertheless perform the position of photocopier machine operator in a manner consistent with the DOT description of that position. *Accord Beinlich v. Com'r*, 345 Fed. Appx. at 168-69; *Lindsley*, 560 F.3d at 606; *see also generally Coleman v. Astrue*, 2010 WL 4094299 (M.D. Tenn. Oct. 18, 2010); *Martin v. Com'r of Soc. Sec.*, 170 Fed. Appx. at 374-75 (holding that where plaintiff does not bring a conflict between the DOT and VE testimony to the attention of the ALJ, and the VE testifies at the hearing that no conflict

10

exists, SSR 00-4p does not require the ALJ to explain how an unknown conflict was resolved).

Plaintiff questions "how counsel, a non-vocational expert, can research possible inconsistencies between the VE's testimony and the DOT during the middle of an ALJ hearing," when the DOT "consists of thousands of job titles," and it is "not possible for an attorney to instantly spot and research potential inconsistencies between the DOT and a VE's testimony about the DOT while simultaneously conducting an ALJ hearing." (Doc. 9 at 6). The undersigned is not without sympathy for counsel's expressed predicament, although one solution is to request that the ALJ hold the record open for post-hearing evidence on the issue, or to submit a post-hearing brief.[3] On the other hand, and contrary to Defendant's position before this Court (Doc. 8 at 5), Plaintiff did not waive the DOT discrepancy issue merely because he failed to present it to the ALJ. *See Sims v. Apfel*, 530 U.S. 103, 110-111 (2000)(rejecting the argument that a plaintiff had waived his challenge to VE testimony on judicial appeal based upon his failure to raise the issue during administrative proceedings). Still, *Sims* does not suggest that Plaintiff is relieved of his ultimate burden to prove his disability, including, if necessary, by alerting the ALJ (or this Court on appeal) to any flaws in the ALJ's analysis at Step 5.

Having disposed of any misperceptions concerning the Plaintiff's and the ALJ's respective obligations under the sequential regulatory scheme, the undersigned returns to the inconsistency that Plaintiff asserts exists between the VE's testimony and the DOT. Plaintiff argues that, given the mental RFC specified by the ALJ, he cannot perform the photocopy machine operator job. The VE testified that his testimony was

---

[3]ALJs often hold administrative records open for short periods of time, most often to admit additional medical records. Additionally, counsel frequently submit post-hearing briefs in which any DOT inconsistencies can be raised, in addition to briefing before the Appeals Council.

consistent with the Dictionary of Occupational Titles ("DOT") job description of the photocopier job, DOT number 207.685-014, which describes the reasoning level for that particular job as a level "2," defined as requiring the ability to "apply common sense understanding to carry out detailed but uninvolved written or oral instructions." However, the ALJ expressly limited Plaintiff to "simple, routine, and repetitive tasks." (Tr. 16).

Plaintiff argues that his mental limitation to "simple, routine, and repetitive" tasks is incompatible with the reasoning level required to perform the job of a photocopy machine operator. Yet Plaintiff cites no case law in support of that position, and – despite being unpublished - ample contrary case law exists. *See Winslow v. Com'r of Soc. Sec.*, 566 Fed. Appx. 418, 421 (6th Cir. 2014)(finding jobs with level two reasoning to be consistent with simple tasks performed in a low-stress environment); *Monateri v. Com'r of Soc. Sec.*, 436 Fed. Appx. 434, 446 (6th Cir. 2011)(finding "no precedent that requires the Commissioner to align DOT 'reasoning levels' with RFC classifications); *Matelski v. Com'r of Soc. Sec.*, 149 F.3d 1183 at *6 (6th Cir. 1998)(unpublished, full text available on Westlaw). Other circuits have reached the same conclusion in published decisions. *See generally Moore v. Astrue*, 623 F.3d 599, 604 (8th Cir. 2010); *Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005).

In his reply, Plaintiff inappropriately attempts to equate the ability "to apply common sense understanding to carry out detailed but uninvolved" instructions to the ability to perform "detailed work." (Doc. 9 at 1-2). But the inclusion in the description of an unskilled job of an ability to use "common sense" to carry out "detailed but *uninvolved*… instructions" does not transform that otherwise "simple" and *unskilled* work

into skilled, complex, or "detailed" work. The reasoning level is only one component of a job description.

Plaintiff's argument greatly overemphasizes the reasoning level required to perform the photocopy machine operator position. That job remains a "simple" one, even if it requires the use of common sense to interpret "uninvolved" instructions that are only slightly more complex than the "one-or-two step instructions" described at the lowest rung of reasoning levels, Level 1. *See also Perraut v. Commissioner*, Civil Case No. 1:12-cv-934-MRB (Doc. 12, R&R adopted in Opinion and Order filed March 27, 2014 (Doc. 16 at 5, holding that a plaintiff limited to "simple, routine and repetitive tasks" "would not plainly be precluded from all positions at Reasoning Levels 2 or 3")). Thus, the undersigned finds no reversible error based on the alleged discrepancy between the reasoning level listed in the DOT for the photocopy machine operator position, and Plaintiff's restriction to "simple, routine, and repetitive" tasks.

### III. Conclusion and Recommendation

Plaintiff's first assertion of error nevertheless requires remand. Based on that clear error, the ALJ's interpretation of and reliance on the VE's testimony does not provide the substantial evidence required to uphold the ALJ's decision. Therefore, remand is required.

In *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 173 (6th Cir. 1994), the Sixth Circuit set forth "what a district court should do once a determination is made that an ALJ erroneously applied the regulation and the Secretary's denial of benefits therefore must be reversed." *Faucher* explained that a trial court "can reverse the decision and immediately award benefits *only* if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to

13

benefits." *Id.* at 176 (emphasis added). This is not a case in which all factual issues have been resolved.

Therefore, **IT IS RECOMMENDED THAT** the decision of the Commissioner to deny Plaintiff DIB and SSI be **REVERSED** because it is NOT supported by substantial evidence in the record as a whole. This case should be remanded for further review and evaluation at the administrative level, consistent with this Report and Recommendation.

 */s Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

RICHARD FROMMEL,                                             Case No. 1:14-cv-522

       Plaintiff,                                                      Dlott, J.
                                                             Bowman, M.J.
  v.

COMMISSIONER OF SOCIAL SECURITY,

       Defendant

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).